■ In the Matter of FERNCLIFF MANOR FOR THE RETARDED, INC., Appellant, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, Respondent.—Yesawich, Jr., J. Appeal from a judgment of the Supreme Court at Special Term (Bradley, J.), entered October 25, 1984 in Albany County, which dismissed petitioner's application, in a proceed-

ing pursuant to CPLR article 78, to annul a determination of respondent revising petitioner's tuition and maintenance rates for the 1979-1980 school year.

Petitioner is a private residential school for mentally retarded children. Pursuant to Education Law article 89, petitioner receives reimbursement from school districts and other governmental entities for the children's tuition and maintenance at rates fixed by respondent. Because the deadline for determining these rates is May 1, prior to commencement of the school year for which they apply (8 NYCRR former 200.13 [b] [renum 200-1.13, eff May 1, 1981]), respondent arrives at the tuition and the maintenance rates based on the school's projected budget.

In 1981, the State Education Department (Department) audited petitioner's financial records for the school years 1978-1979 and 1979-1980. This review disclosed that the school's actual costs for 1978-1979 exceeded those projected and that its actual costs for 1979-1980 were less than anticipated. Accordingly, the Department recommended to respondent that the reimbursement rates for each of those years be adjusted to reflect petitioner's actual costs. The net result was an alleged overpayment to the school of $41,914 for the two years in question.

Ultimately, however, respondent approved only the reduction in petitioner's 1979-1980 reimbursement rates; without any offset for the alleged underpayment in 1978-1979, the amount of the overpayment totals $140,628. Petitioner then commenced this CPLR article 78 proceeding, claiming that the downward adjustment of its 1979-1980 tuition and maintenance rates was arbitrary and capricious. Special Term's dismissal of the petition prompted this appeal.

With respect to petitioner's contention that the overpayment should be reduced by the alleged underpayment for 1978-1979, respondent correctly observes that the issue raised by the school's petition is the rationality of the rates for the 1979-1980 school year; accordingly, that is the only issue properly before us (see, Matter of Tomlinson v Board of Educ., 112 AD2d 576).

Furthermore, this claim that respondent was obliged to take underpayments for prior years into account is conclusory and without statutory foundation. The pertinent definitions of "tuition" and "maintenance" in Education Law § 4401 suggest that actual cost is a relevant consideration in setting rates. In conformity with those definitions, respondent, using petition-

er's own records of the costs it had in fact experienced, determined petitioner's tuition rate for the 1979-1980 school year by calculating the actual cost per child of tuition and adding to that figure a $250 profit. Similarly, respondent computed the maintenance rate by dividing the actual cost of maintenance by the enrollment to find the cost of maintenance on a per child basis.

Petitioner finds fault with those computations because respondent's delay in approving the school's 1979-1980 budget proposal prevented the school from incurring the expenditures projected and advances the bizarre and wholly untenable proposition that, therefore, it should be reimbursed for such projected, but unincurred, costs. Petitioner's complaint that respondent's delay caused it to receive less revenues than expected is also indefensible, for the reimbursement rate took into account the actual, not projected, revenues involved. Since respondent's determination has a rational basis, it must be confirmed *(see, Matter of Organization to Assure Servs. for Exceptional Students v Ambach,* 56 NY2d 518).

Judgment affirmed, with costs. Main, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.